IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| TONI JEAN WILLIAMS, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 7:17-cv-00053-O-BP |
| § | |
| NANCY A. BERRYHILL, § | |
| Acting Commissioner of the Social § | |
| Security Administration, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE, NOTICE, AND ORDER**

Plaintiff Toni Jean Williams ("Williams") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, and the administrative record, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision.

**FINDINGS AND CONCLUSIONS**

**I.     STATEMENT OF THE CASE**

Williams filed an application for DIB on December 2, 2014, alleging that her disability began on September 24, 2011. (Transcript ("Tr.") 26). The Commissioner denied her claim initially on March 25, 2015, and denied it again on reconsideration on June 16, 2015. (Tr. 26). Williams requested a hearing, which was held on June 15, 2016, before Administrative Law Judge ("ALJ") Angelita Hamilton via a video hearing, with Williams and her attorney present. *Id.* The ALJ issued her decision on July 29, 2016, finding that Williams was not disabled. (Tr. 39).

Specifically, the ALJ employed the statutory five-step analysis and established during step one that Williams had not engaged in substantial gainful activity since September 24, 2011, the alleged disability onset date. (Tr. 28). At step two, the ALJ determined that Williams had the severe impairments of obesity, connective tissue disease, Sjogren's syndrome, osteoarthritis, and degenerative disc disease. (Tr. 28). At step three, the ALJ found that Williams's impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Pt. 404(p). (Tr. 30–31). In particular, the ALJ concluded that Williams retained the residual functional capacity ("RFC") to perform sedentary work. (Tr. 32). At step four, the ALJ determined that Williams was able to perform past relevant work. (Tr. 38). Because the ALJ determined she has the residual functional capacity to do her past relevant work, the ALJ held that Williams was not disabled, and thus did not proceed to the last step of the five-step statutory analysis.

The Appeals Council denied review on March 7, 2017. (Tr. 1). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.     FACTUAL BACKGROUND

According to William's pleadings, testimony at the administrative hearing, and the administrative record, she was fifty-two years old on the alleged disability onset date, and fifty-seven years old at the time of the administrative hearing. (Pl's Br. at 2). She has a high school education. (Tr. 53). Her past relevant work includes working as a medical biller and accounts payable clerk. (Tr. 79). Williams asserts that her physical impairments render her disabled under the SSA.

### III. STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a "medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months" that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see Stone v. Heckler*, 752 F.2d 1099, 1100-03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. § 404.1520(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. *Crowley v. Apfel*, 197 F.3d 197, 197-98 (5th Cir. 1999); 20 C.F.R. § 404.1520(f). "The claimant bears the burden of showing that [she] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy

that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC—"the most [a claimant] can still do despite [her] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1).

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Audler*, 501 F.3d at 447; *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if evidence is present. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harris*, 209 F.3d at 417. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)).

## IV.    ANALYSIS

Williams raises two issues on appeal. She claims (1) that the ALJ failed to consider all of her symptoms in determining her residual functional capacity ("RFC"); and (2) that the ALJ failed to properly evaluate the medical opinion evidence in the record.

### A.    Substantial Evidence Supports the ALJ's RFC Determination.

Williams contends that the ALJ's finding that she could conduct sedentary work for eight hours per day, five days per week, or an equivalent work schedule, was not supported by

substantial evidence. (Pl's Br. 5). Williams alleges that the ALJ "failed to properly evaluate the symptoms stemming from the Plaintiff's connective tissue disorder and Sjogren's syndrome, conditions which [the ALJ] acknowledged to be severe and capable of producing of the type and severity which the Plaintiff described." (Pl's Br. 7). The ALJ explicitly considered and rendered findings on each of the aforementioned purported points of error. (Tr. 26–39). The ALJ's findings and ultimate determination are supported by substantial evidence in the record, including evidence that the ALJ cited to and evaluated as she made her RFC determination.

The determination of whether a claimant's impairments meet or medically equal the requirements of impairments in the Listing is reserved solely to the Commissioner. 20 C.F.R. § 404.1527(d)(2). In evaluating whether a claimant's impairments are medically equivalent to a listed impairment, the ALJ considers the evidence in the record as well as the findings of the State agency consultants. 20 C.F.R. § 404.1526(c)–(d). Two state agency medical consultants ("SAMCs") evaluated Williams (Tr. 86–93; 95–102). The SAMCs assessed Williams's physical impairments and ultimately found that her statements regarding symptoms considering the total medical and non-medical evidence in the file were not credible. (Tr. 91; 102). Furthermore, the SAMCs found that Williams would be able to occasionally lift and/or carry up to fifty pounds, frequently life and/or carry twenty-five pounds, stand and/or walk and sit for a total of about six hours in an eight-hour workday. *Id.* However, the ALJ gave little weight to these assessments because the SAMCs' reports were "inconsistent with the medical evidence, which reveals systemic autoimmune problems, and objective evidence of degenerative spine condition." (Tr. 37).

The ALJ specifically considered Williams's connective tissue disorder and Sjogren's syndrome and any applicable limitations it may have on her determination of her RFC. The ALJ referred to Williams's Sjogren's syndrome, but found that her statements concerning "the

5

intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 33). In reviewing the medical record, the ALJ found that Williams's symptoms and functional loss due to her connective tissue disorder and Sjogren's syndrome are not as severe as alleged. (Tr. 34). The ALJ relied on the entire medical record, including medical evaluations by Dr. Chris Codding; Dr. Jerome Adams; Dr. Patty Rowley; Dr. Amita Hegde; Dr. Jeremy Phelps; Dr. Jeff Swanson; Dr. F. Najan; and other physical impairment evaluations. (Tr. 96–93; 383–389; 521–535; 593–596; 889 –892).

Notably, Williams had symptoms of Sjogren's for years prior to her alleged disability onset date when she was still working full-time, as medical records indicate that Williams had dealt with Sjogren's syndrome for over fifteen years. (Tr. 402). Thus, Williams continued to work after the onset of Sjogren's symptoms that she now argues should be deemed severe and disabling. *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (working for several years while suffering from allegedly disabling impairments supports a finding of no disability) (citing *Fraga v. Bowen*, 810 F.2d 1296, 1305 and n.11 (5th Cir. 1987) (ability to work despite pre-existing condition supports a finding that the claimant is not disabled)).

Further, the ALJ recognized that Williams's Sjogren's disease could reasonably cause fatigue, but that she was also able to engage in "robust" daily activities (Tr. 32–38). During the hearing, Plaintiff stated that she engages in a wide array of normal activities, including cleaning, cooking, gardening, and doing laundry. (Tr. 55–57); *see Griego v. Sullivan*, 940 F.2d 942, 944–945 (5th Cir. 1991) (finding that an ALJ may consider a claimant's daily activities, along with other evidence, when she evaluates the credibility of the claimant's allegations of disability). For pain to rise to the level of disabling, that pain must be "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Chambliss v. Massanari,* 269 F.3d 520, 522 (5th Cir.

2001). The decision arising from the ALJ's discretion to determine whether pain is disabling is entitled to considerable deference. *See id.*

Williams points to her subjective complaints of "overwhelming" fatigue as evidence that she is unable to regularly engage in significant activities; however, her testimony at the hearing and medical records indicate otherwise. (Tr. 55–57, 231–233). While the ALJ considered the subjective complaints of the claimant, such statements were given little weight due to a general lack of support from objective evidence and stated that "the claimant's statements concerning her functional limitations are not supported by her treating and attending physician and the medical findings as she has alleged and has not imposed more than a minimal restriction of the claimant's ability to perform basic work activity." *See Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988) (per curiam) ("[S]ubjective complaints [must] be corroborated, at least in part, by objective medical findings."). An ALJ may discount subjective complaints of pain as inconsistent with other evidence in the record. *See Dunbar v. Barnhart,* 330 F.3d 670, 672 (5th Cir. 2003)

As to Williams' claims regarding the Fifth Circuit decision in *Ripley v. Chater*, the facts in that decision are distinguishable from the one at bar. Specifically, Williams seems to rely on *Ripley* because the ALJ's determination does not speak to the effects of her impairments on her ability to work. (Pl's Br. at 6). In *Ripley,* the ALJ found that the claimant could perform sedentary work even though there was no medical evidence or testimony to support that conclusion. 67 F.3d 552 (5th Cir. 1995). The Fifth Circuit, noting that the record did not clearly establish the effect that the claimant's impairment had on his ability to work, remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. *Id.* at 557–58.

Contrary to the facts in *Ripley,* in this case there are two separate RFC assessments that evaluated the effects of Williams's functional impairments on her ability to work, consultative examination reports from multiple physicians, treatment records, and private medical assessments that were all relied upon by the ALJ in making her RFC determination. In her reply brief, Williams argues that her level of fatigue varies and that "there is no obligation on the medical community to record every complaint, every time; nor is the Plaintiff obligated to repeat complaints to her treating physician of which the physician is well aware." (Pl's Br. 4). However, the *Ripley* standard does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence only where the claimant shows where the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff. *Jones v. Astrue,* 691 F.3d 730, 733 (5th Cir. 2012). "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley,* 67 F.3d at 557 n. 22. Put another way, Plaintiff "must show that [she] could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728–29 (5th Cir. 1996). Here, Williams has not met her burden nor has she argued that additional evidence or specific evidence would have led the ALJ to reach a different RFC determination. Thus, reversal is not warranted on this ground.

The ALJ considered the available evidence in the record with respect to Williams's treatment plans. Williams does not identify any evidence in the record that supports her argument that the ALJ improperly determined that her connective tissue disorder and Sjogren's syndrome were disabling. Thus, the ALJ found that though Williams's "Sjogren's syndrome; connective tissue disease; and osteoarthritis are not disabling, they do substantially limit the claimant's ability to perform basic work activities." (Tr. 36).

While Williams's brief only lists two issues as matters before the Court—whether the ALJ properly evaluated the claimant's symptoms in making the RFC determination and whether the ALJ properly evaluated the medical opinion evidence in determining the RFC—Williams briefly mentions a potential defective hypothetical question to the vocational expert. (Pl's Br. 6). Williams does not explain how the question was defective; however, the Court will nevertheless address this issue. A hypothetical question to a vocational expert cannot provide substantial evidence supporting the denial of benefits unless: (1) the hypothetical reasonably incorporates all of the claimant's disabilities recognized by the ALJ; and (2) the claimant or her representative is afforded the opportunity to correct deficiencies in the question. *See Boyd*, 239 F.3d at 706–07; *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). Where an ALJ finds that a claimant is not disabled based on answers to a defective hypothetical, substantial evidence does not support the finding, and the case should be reversed and remanded for further administrative proceedings. *See Bridges v. Comm'r of Soc. Sec. Admin*, 278 F. Supp. 2d 797, 807 (N.D. Tex. 2003).

Even if the ALJ erred in failing to include limitations in the hypothetical she posed to the VE, this error would be harmless. Under Fifth Circuit precedent, "if the administrative law judge's hypothetical omits a recognized limitation 'and the claimant or his representative is afforded the opportunity to correct deficiencies in the administrative law judge's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions there is no reversible error.'" *Fitzpatrick*, 2016 WL 1258477 at *12 (citing *Wise v. Barnhart*, 101 Fed. Appx. 950, 951 (5th Cir. 2004) (per curiam)). Here, Williams' attorney was afforded an opportunity at the hearing to cross-examine the VE and to correct deficiencies in the ALJ's hypothetical question by suggesting to the expert any purported defects in the hypothetical question. *See Harrison v.*

9

*Colvin*, 2014 WL 982843, at *5 (N.D. Tex. Mar. 12, 2014). Accordingly, any deficiency in the ALJ's hypothetical to the VE was not reversible error.

> **B. The ALJ Properly Weighed the Medical Source Opinions of Record.**

Williams alleges that the ALJ erred in declining to accord controlling weight to the opinion of Dr. Jeff Swanson and Dr. Ferhana Najan, both alleged treating physicians of Williams. (Pl.'s Br. 7–8). Williams argues that the ALJ erred by giving Dr. Swanson's opinion "partial weight" and "little weight" and Dr. Najan's opinion "little weight," and that the "ALJ has not provided anything more than cursory and general citations to the Plaintiff's conditions to reject the opinion of either Dr. Swanson or Dr. Najan." (Pl.'s Br. 10). Further, Williams argues that the ALJ failed to consider the opinion of Dr. Jerome Adams, and thus the ALJ's RFC determination was not supported by substantial evidence. (Pl's Br. 12–13).

William relies on the Fifth Circuit's decision in *Newton v. Apfel*, which requires ALJs—when faced with inconclusive or controverting evidence—to perform a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. 404.1527(d)(2) or otherwise seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. 404.1512(e). 209 F.3d 448, 453 (5th Cir. 2000). While it is true that, under the applicable regulations, the ALJ must follow a six-factor detailed analysis unless the ALJ gives "a treating source's opinion controlling weight," that analysis only applies when a treating source's opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with" other substantial evidence." *Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir.2000) (quoting *Martinez v. Chater,* 64 F.3d 172, 176 (5th Cir.1995) (quoting 20 C.F.R. § 404.1527(d)(2)). In addition, "if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion

evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e)." *Id.*

The ALJ did not wholly ignore the medical opinions of either Dr. Swanson or Dr. Najan. Instead, the ALJ found that the medical record did not support Dr. Swanson's conclusion that Williams could carry ten pounds occasionally, and five pounds frequently, that she could only stand for a total of 1–2 hours total, and for less than one hour without interruption, and that "she could perform most postural activities never." (Tr. 37). In giving this portion of Dr. Swanson's opinion partial weight, the ALJ reasoned that this part of Dr. Swanson's assessment "could be fairly characterized as indicating the capability to perform sedentary work." *Id.* However, the ALJ found that Dr. Swanson's opinion failed to accommodate all limitations faced by Williams due to Dr. Swanson's limited access to the entire medical record, and thus declined to give it greater weight. *See Newton,* 209 F.3d at 456.

Williams suggests that "there is no evidence that the ALJ applied the factors" contained in 20 C.F.R. §§ 404.1527 and 416.927 in determining that Dr. Swanson and Dr. Najan's opinions expressed in her medical source statement were not entitled to controlling weight. (Pl.'s Br. 11). However, the ALJ clearly considered the medical opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and determined that Dr. Swanson and Dr. Najan's medical opinions were entitled to "little weight." (Tr. 37–38). Williams argues that the ALJ failed to follow the detailed six-factor analysis when the ALJ fails to give a treating physician's opinion controlling weight, but the ALJ is not bound to go through that analysis if the contested medical opinions are supported by medically acceptable clinical and laboratory diagnostic techniques and the opinions are not inconsistent with the other substantial evidence. 20

C.F.R. § 404.1527(d)(2); *Heck v. Colvin*, 674 F. App'x 411, 415 (5th Cir. Jan. 9, 2017) (the ALJ did not err in failing to consider the regulation factors before declining to give controlling weight to a treating physician's opinion "because such consideration is required only when there is no other reliable evidence from treating physicians that contradicts the [treating physician's opinion]"). Here, the ALJ stated she could not give controlling weight to Dr. Swanson because he did not consider all of the claimant's limitations, as he did not have access to the entire medical record—and thus his opinion was inconsistent with the other substantial evidence. In regards to Dr. Najan, the ALJ found that Dr. Najan's assessment was far more limited than sedentary work that Williams could perform—as there is substantial evidence indicating that she is able to engage in daily living activities. *See* 20 C.F.R. § 404.1527 (listing daily activities as one of the considerations weighed when weighing opinion evidence by physicians); *Griego*, 940 F.2d at 945 ("It was . . . within the discretion of the ALJ to discount [the claimant's] complaints of pain based upon the medical reports combined with her daily activities and her decision to forgo certain medication.").

In regards to Dr. Jerome Adams, Williams argues that the ALJ's RFC determination is not supported by substantial evidence because she did not consider the opinion of Dr. Adams—a physician who gave Williams a consultative examination. (Tr. 383–385). As Williams correctly states, 20 C.F.R. § 404.1527 requires the ALJ to evaluate every medical opinion received. (Pl's Br. 12). Here, the ALJ did evaluate every medical opinion received, including Dr. Adams's consultative examination of the claimant on March 10, 2015. (Tr. 35–37). While the ALJ did not specifically list Dr. Adams as one of the medical opinions in reaching her RFC determination, she did not reject or ignore Dr. Adams's opinion. Further, Williams's argument that the ALJ was required to provide an explanation for allegedly rejecting a medical opinion applies to treating

physicians, not to a consultative examiner. *See Gomez v. Barnhart*, No. SA-03-CA-1285-XR, 2004 WL 2512801, at *2 (W.D. Tex. Nov. 5, 2004) ("[A]n ALJ who rejects the opinion of a treating physician must explain his reasons for doing so."). Here, both the ALJ and Williams note that Dr. Adams provided a consultative examination, and thus the requirements under 20 C.F.R. § 404.1527 do not apply. (Tr. 35) (Pl's Br. 12).

Based on a review of the record, the ALJ considered all evidence of record in reaching her determination that Williams was not disabled, including the medical records from United Regional Physician Group, Orthopaedic & Reconstructive Center, Enid Live Well, and North Texas Ophthalmology Associates; the opinions of the State agency consultants; and private physicians, and the subjective complaints of Williams herself. The ALJ considered the assessments and evaluations conducted by Dr. Chris Codding, Dr. Jerome Adams, Dr. Patty Rowley, Dr. Amita Hegde, Dr. Jeremy Phelps, Dr. Jeff Swanson, and Dr. F. Najan. While it is clear that Williams suffers from pain, the medical records do not support a finding that her pain and limitations are constant, unremitting, and wholly unresponsive to therapeutic treatment. *See Chambliss*, 269 F.3d at 522. The medical record shows that her physicians have encouraged her to exercise on a daily basis as a means to address her fatigue and malaise. (Tr. 395). Additionally, Williams testified that she is able to cook, do laundry, grocery shop, and clean. Accordingly, there is substantial evidence that supports the conclusions of the ALJ that Williams' subjective reports of pain do not rise to the level of disability. *See Richardson v. Perales,* 402 U.S. 389, 401 (1971).

Williams has not met her burden of proving that substantial evidence did not support the ALJ's determination. To the contrary, the evidence proves that the ALJ considered the medical opinions of Dr. Swanson, Dr. Najan, and Dr. Adams, but that she determined that they were not consistent with the remaining credible evidence in the record.

## V.     CONCLUSION

The ALJ followed the correct legal standards in reaching her conclusion, and substantial evidence in the record supports the ALJ's determination that Williams was not disabled. Further, the ALJ properly weighed the medical opinions of record.

## RECOMMENDATION

Because the ALJ applied the proper legal standards and substantial evidence in the record supports the ALJ's factual findings, the undersigned RECOMMENDS that Judge O'Connor AFFIRM the Commissioner's decision.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party shall have until **February 8, 2018,** to serve and file written objections to the United States Magistrate Judge's proposed

findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

Signed January 25, 2018.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

15